UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA

Plaintiff,

v.

DANISH SALEEM

Defendants.

Case No. 4:11-cr-00237-RAS-DDB

**MOTION TO COMPEL**

Defendant Danish Saleem respectfully requests this court issue an order compelling the Government to provide a complete forensic image copy of all seized media to be reviewed at Defendants' experts' offices in preparation for trial. The reasons in support of this motion are contained in the attached brief.

Respectfully submitted,

/s/Dean Boland

Dean Boland
1475 Warren Road
Unit 770724
Lakewood, Ohio 44107
216-236-8080 phone
866-455-1267 fax
dean@bolandlegal.com

Case 4:11-cr-00237-RAS-DDB Document 32 Filed 06/21/22 Page 1 of 18 PageID #: 126

## BACKGROUND

The facts of this motion are not in dispute. The undersigned contacted the Government's representative in this matter via phone to discuss access to the seized media in this case. (i.e. the computers, hard drives, disks, etc. that the government seized pursuant to a search warrant). The government offered that the media could be evaluated by the defense computer forensics expert in the conference room of the prosecutor's office. The defense requested a copy of the alleged contraband be provided to the defense expert, suggesting an accompanying protective order from the court regarding its handling, to enable Mr. Saleem to fairly prepare and present his defense at pre-trial hearings and at trial. The government declined the defense request offering the use of a conference room at the government's offices as a substitute.

## MEMORANDUM

Rule 16(a)(1)(e) of the Federal Rules of Criminal Procedure mandate disclosure by the government of the following:

> **(E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:**
> **(i) the item is material to preparing the defense;**
> **(ii) the government intends to use the item in its case-in-chief at trial; or**

**(iii) the item was obtained from or belongs to the defendant.**
Rule 16(a)(1)(E) does not allow for either inspection or copying. It mandates both. The rule does not require a defendant to substantiate his need for copies of evidence the government seeks to use against him.

## THE GOVERNMENT'S PROPOSED RESTRICTED ACCESS

The government has offered access to their conference room for Mr. Saleem's computer expert to examine the seized media. The hours he can operate in that environment are not unlimited. His need to access the evidence within his own schedule of matters involving other clients in his practice, will typically be beyond business hours on some days. Weekend, holiday and other off hours access via the prosecutor's office conference room are not promised to Mr. Saleem's expert. Further, the government is unwilling to pay the increased defense cost their position imposes on Mr. Saleem. The expert will have driving time to and from the government's offices, expensive equipment that he will have to convert to a mobile lab, concerns about damage to that equipment arising from his use of the government conference room (e.g. water damage from sprinkler system malfunction, out-of-service concerns when various process of the the analyst must run overnight, unattended, electrical surges that could easily damage the experts' sensitive equipment and so forth). The government has declined to provide insurance or guarantees that any damage to Mr. Saleem's expert's equipment will be reimbursed to that expert.

3

Finally, the government can make no promises that this mobile lab will remain available and uncontaminated by its employees throughout the pre-trial and trial process. The court would have a difficult time granting a two or three day recess to a trial or hearing merely to enable the defense expert to make his lab mobile and spend a day performing an examination that would take him perhaps 30 minutes to complete if the seized media were in his lab - accessible to him as it is to the government's expert. As a result, Mr. Saleem is required to pay an exorbitant amount for what is the retention of a typical computer forensics expert's work on his case to comply with the government's restrictions. Mr. Saleem can also not count on being able to respond to issues presented at hearings or at trial by easily contacting his expert to perform tasks that are triggered by expected or unexpected developments in testimony or evidence at hearings and trial.

## **THE UNFUNDED MANDATE OF RESTRICTED ACCESS**

The cost to Mr. Saleem to send an expert to the government's offices merely to view the seized media is excessive. Meanwhile, the expert must commit each of the items to memory as he prepares for trial. His performance at trial, in front of the jury, will undoubtedly appear less prepared and less reliable than the government's witnesses who will have continuous access to the seized media before and during trial at counsel table if they choose.

During Mr. Saleem's cross examination of the government's witnesses, he will not have ready access to the seized media or forensic copies thereof, organized as part of trial preparation, to effectively challenge that testimony. He cannot follow

along with government witnesses testimony as they comment on various aspects of the seized media, the key evidence in the case, and cannot meaningfully preview anticipated upcoming exhibits to ponder objections as necessary.

The government will undoubtedly copy, into some format, the alleged contraband items. It will arrange them and present them to witnesses before trial during witness preparation. Even if it declares it will do no such thing, it retains **the option** to do so if it deems it necessary. It can present any part of the seized media as part of its cross examination of Mr. Saleem's witnesses. Without copies of the seized media, Mr. Saleem cannot make exhibits for use in cross-examining the government's witnesses. Even if he could somehow have experts make exhibits in the prosecutors' office conference room, he would be unable to access those exhibits unless he complies with whatever government restrictions and procedures imposed on that access. He would be relegated to using whatever exhibits in whatever self-serving format and arrangement the government prepares. He cannot prepare his own exhibits for his case in chief identifying areas of the seized media that appear to be bogus, link to arguments that tend to exculpate him and so on.

## **DETERMINING THE ORIGIN OF THE EVIDENCE**

The government has no idea what the origin or authenticity is of their evidence in this case. It likely has no instinct to find out. The defense, however, has a keen instinct to make that determination. Any alleged contraband in this case that actually is present, right now, online in locations containing disclaimers

as to its authenticity represent exculpatory evidence Mr. Saleem is entitled to search for.

The origin of the items cannot be determined via Internet searches without the ability to regularly visually compare the evidence on the seized media, including images and videos, to those found on the internet. Such analysis is critical as there are a variety of image related sites containing government-required disclaimers regarding the age of "actors" in their content that could relate to Mr. Saleem's intent. Modified versions of the charged items may be existent online as well and only a side by side comparison provides sufficient opportunity to identify such modified versions. In addition to potential experts needing copies of the items, defense counsel needs to possess them to prepare legal arguments and trial strategy. The defense and various defense experts (e.g. computer forensics and digital image experts) will undoubtedly need to perform these investigatory functions online. However, the government's position prohibits that investigatory work being done outside of its conference room and perhaps not at all.

## ALLEGED CONTRABAND VIDEOS AS EVIDENCE

Proper digital image or digital video analysis, for determinations of authenticity, can require frame-by-frame analysis that is not possible by merely viewing the items in a government building on a government screen. As discovery and trial preparation unfolds, facts often develop requiring a re-examination of the evidence. New theories, new cases, new statutes regularly require the fine tuning of trial strategy necessitating re-examination of previously examined evidence in a

6

new light.  Without ready access to the seized media, Mr. Saleem cannot respond to those events and prepare for trial while the government can easily fortify its positions up to and during trial. Without copies, each such development of Mr. Saleem's defense costs him thousands of dollars while the government's cost of providing a copy of such items is the cost of a few blank CDs and a FEDEX shipment to defense counsel.

In spite of this necessity, the government asserts that 18 U.S.C. 3509 m(1) and m(2A) not prohibit it from providing Mr. Saleem this material in compliance with Rule 16.

H.R. 1447 amended 18 U.S.C. 3509 as follows:

Section 3509 of title 18, United States Code, is amended by adding at the end the following:

> **(m) Prohibition on Reproduction of Child Pornography-**
> **(1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) must remain in the care, custody, and control of either the Government or the court.**
> **(2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy,**
> **photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.**
> **(B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material individual the defendant may seek to qualify to furnish expert testimony at trial.**

7

A plain reading of the statute reveals that it does not prohibit the government from providing copies of the seized media. The statute orders this court to deny the defense motion for discovery of materials that meet the definition of 18 U.S.C. 2256.

The items covered by this amendment to 18 U.S.C. 3509 are "any property or material that constitutes child pornography [as defined by section 2256 of this title]." See 18 U.S.C. 3509 m(1) and m(2A). Determining whether this statute applies involves determining whether the items sought in discovery meet the definition of child pornography under 18 U.S.C. 2256.

## DOES THE SEIZED MEDIA MEET THE DEFINITIONS IN THE STATUTE?

18 U.S.C. 2256(8)(A), (B) and (C) contain the three definitions of images whose possession is prohibited by 18 U.S.C. 2252. Those definitions read as follows:

> **(8) "child pornography" means any visual depiction…where--**
> **(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;  [actual minor actually engaged in prohibited conduct]**
> **(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or [not actual minor, but made so that the "reasonable person" cannot distinguish between it and an actual minor]**
> **(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."  [use of image of actual minor in an innocent pose modified to appear to be that minor engaged in prohibited conduct]**

Congress in 18 U.S.C. 3509 m(1) and m(2A) orders this court to deny any motion by defense counsel seeking copies of any item defined 2256(8)(A), (B) or (C). It says nothing more. Meaning, requests for evidence that do not meet one of the

8

three 2256(8) definitions, are not covered by 18 U.S.C. 3509 at all. (e.g. request for written documents, images not containing people, digital videos of landscapes, images that merely "appear to contain" the items in the definitions above and so on). Moreover, if requested material does not meet any of the three 2256(8) definitions, it is not contraband at all and Criminal Rule 16 mandates its disclosure to Mr. Saleem. Federal Rule of Criminal Procedure 16.

No court has held that Rule 16 has an implicit contraband exception to its clear requirements. Logically, the court must determine whether the seized media contain actual contraband before basing its denial of a motion requesting such material upon 18 U.S.C. 3509 m(1) and m(2A).

The government speculates that the seized media contains one or more items that meet one of those definitions above. It has yet to identify which definition. That failure to identify which of the three definitions the items allegedly meet is critical. Each of those definitions carries with it distinct constitutional challenges. 2256(8)(B), for example, is functionally equivalent to the "appears to be" and "conveys the impression" language the court struck down in *Ashcroft v. Free Speech Coalition* 122 S.Ct. 1389, 535 U.S. 234. Items that "appear to be" or "convey the impression" they are real are not contraband. Id. Likewise, items that are "virtually indistinguishable from" the real thing are not contraband. Words have meaning. Although "appears to be" and "conveys the impression" are linguistically different from "virtually indistinguishable from" they carry the identical meaning. There is no case in the country where the government has offered an example of an

9

item that can be prohibited as "virtually indistinguishable from" the real thing, yet is not equally describable as "appears to be."

Any restriction on the provision of copies of all the seized media is a ruling by this court that those items **do meet** one of the 2256(8) definitions. For without such a finding, Criminal Rule 16 does not permit the government to decline the simple task of producing a forensic copy of the seized media containing the alleged contraband versus the expense, waste of time and general inconvenience of forcing an expert and counsel to merely view the items, attempt to memorize them for trial, and prepare a defense on that basis.

Permitting the Defense to conduct their own inspection of the alleged contraband materials at a duly qualified defense computer experts' offices does not violate subsection (m)(1) of 18 U.S.C. § 3509. Criminal defense attorneys are officers of the court and should be permitted to conduct their own investigation and analysis of said materials. "A lawyer is a representation of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice." Model Rules of Professional Conduct, preamble (1984); See also, *Halloway v. Arkansas* (1978 ), 435 U.S. 475, 485-86; *Powell v. Arkansas* (1932), 287 U.S. 45, 73

As a result, the defense should be held to the same standard as any attorney or government official entrusted by the court. Difference in treatment is not warranted. The Defense's computer forensic experts will conduct their analysis in a safe and secured laboratory where only the investigating experts are granted access to the testing facility. Furthermore, all results of said analysis are kept completely

10

confidential. There is no reason to believe that defense counsel or the forensic expert cannot be trusted with the material. *United States v. Hill* (C.D. Cal. 2004) 322 F.Supp.2d 1081, 1091.

As a result of the amended subsection (m)(1) granting authority for officers of the court to control alleged contraband containing child pornography, Defense counsel, an officer of the court, should be permitted to direct a defense computer forensics expert to conduct an independent analysis of said material.

## THE DEFENDANT HAS A PRESUMPTION OF INNOCENCE

The Defendant maintains that he is innocent until proven guilty and conducting an independent analysis is essential to the preservation of a fair trial. It has been traditionally held as a basis for the legal system that an accused criminal defendant is presumed innocent until proven guilty. See *Alford v. United States* (1931), 282 U.S. 687, 689; *Hopt v. Utah* (1887), 120 U.S. 430, 439.

In *Coffin v. United States* (1895), 156 U.S. 432, 458-459 2, the Supreme Court of the United States stated that "the presumption of innocence is a conclusion drawn by the law in favor of the citizen, by virtue whereof, when brought to trial upon a criminal charge, he must be acquitted, unless he is proven to be guilty. In other words, this presumption is an instrument of proof created by the law in favor of one accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created." Id. See also *Dodson v. U.S.* (4th Cir. 1928) 23 F.2d 401, 402.

Furthermore, the Defendant asserts that permitting his forensic experts to conduct an independent analysis is essential for the preparation of an adequate defense. The preparation of said defense is essential to assure both fairness and reliability in the establishment of guilt or innocence. Therefore, in the interest of preserving the presumption of innocence, the Defendant has the right to prepare an adequate defense, and can only do so through an independent analysis of the alleged contraband.

## H.R. 4472 § 604 CREATES AN INADEQUATE OPPORTUNITY TO EVALUATE THE GOVERNMENT'S EVIDENCE

H.R.4472 § 604 creates an inadequate opportunity to conduct the necessary complex procedures if required to use a government facility. Any examinations conducted on a government system, such as an FBI computer, will leave behind a roadmap of the processes and results on that computer's hard disk drive, providing the government with access to the Defendant's work product. See *Fabrizio*, 341 F.Supp.2d at 49. Requiring the Defendant's expert to view the alleged contraband at a governmental facility would be unduly burdensome and costly to the Defendant.

The Defendant has the absolute right to an expert examiner of his choice. The Defendant's expert is located approximately two hours drive, one way, from the prosecutor's office and it would be extremely burdensome, costly and unduly prejudicial to the Defendant to require his defense counsel and his expert to travel repeatedly to the prosecutor's office in compliance with H.R. 4472, section 604. Furthermore, H.R. 4472 § 604 et seq. implies that in granting the Defendant's

motion for independent physical analysis, further harm is done to the alleged minors depicted in the alleged contraband because of continued circulation of said images. There is an implication in this section that defense attorneys and their experts are less sensitive to the harm to children caused by continued circulation of the alleged contraband and thus, are less responsible to prevent it than an attorney for the government. See, e.g. Cadet, 423 F.Supp. 2d at *3 (holding that there is no greater risk of harm to children in granting defense counsel a copy of the alleged contraband for preparation of its defense under a suitable protective order than exists in the government's maintenance and use of the files in preparation for its own case)(emphasis added).

Moreover, private citizens affiliated with and/or employed by the National Center for Missing and Exploited Children (NCMEC) have repeated access to alleged contraband and are granted immunity from both civil and criminal liability. See H.R. 3132 §§ 132, 133. H.R. 3132, section 132 reads, in part: Notwithstanding any other provision of law, the Attorney General shall ensure that the National Center for Missing and Exploited Children has access to the Interstate Identification Index to be used by the Center only within the scope of its duties and responsibilities under Federal law. Id.

Defendant's counsel, as an officer of the court, has the duty to provide a complete and adequate defense under the Model Rules of Professional Conduct. Clearly, this can only be accomplished via independent analysis of the alleged contraband.

H.R. 3132, section 133 reads, in part:

(1) IN GENERAL- Except as provided in paragraphs (2)..., the National Center for Missing and Exploited Children, including any and all of its directors, officers, employees, or agents, is not liable in any civil or criminal action for damages directly related to the performance of its CyberTipline responsibilities and functions as defined in this section.

(2) INTENTIONAL, RECKLESS, OR OTHER MISCONDUCT- Paragraph (1) does not apply in an action in which a party proves that the National Center for Missing and Exploited Children, or its officer, employee, or agent as the case may be, engaged in intentional misconduct or acted, or failed to act, with actual malice, with reckless disregard to a substantial risk of causing injury without legal justification, or for a purpose of responsibilities or functions under this section. Id.

Defense attorneys, as officers of the court, should be afforded the same trust and accountability afforded to NCMEC and the prosecuting government with respect to granting access to alleged contraband in order to properly prepare an adequate defense. The Defendant asserts that it is highly illogical to presuppose that an agent of the government would adhere to the law with respect to the continued circulation of alleged contraband more so than defense counsel and their experts.

**AMPLE OPPORTUNITY**

18 U.S.C. § 3509(m)(B) reads in pertinent part:

14

For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant <u>if the Government provides ample opportunity</u> for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." Emphasis added.

Other courts have held that the government's refusal to compensate a Defendant for the excessive costs of reviewing evidence at a government facility is sufficient to find a lack of ample opportunity to review that evidence. See Exhibit A, Decision in *U.S. v. Knellinger*, Case No. 3:06cr126, E.D. Virginia.

The court in *Knellinger* noted that the restrictions in 18 U.S.C. 3509(m) "are serious and significant, they have limited reach. Defendants...may obtain, by court order, copies of child pornography when the United States cannot provide an "ample opportunity for inspection, viewing, and examination at a Government facility. Consequently, § 3509(m) is not an absolute prohibition on copying child pornography for inspection outside a Government facility." Id. at 7.

Moreover, "ample opportunity" may, in some circumstances, include greater access than what the Constitution alone would require. In interpreting this same statutory provision, another district court noted that "[t]he word 'ample' means 'generous or more than adequate in size, scope, or capacity.'" *United States v.*

15

*O'Rourke,* No. CR 05-1126-PHX-DGC, 2007 WL 104901, *4 (D. Ariz. Jan. 17, 2007) (citing Webster's New Collegiate Dictionary 39 (1981)). As discussed above, the opportunity to inspect, view, and examine contemplated by § 3509(m)(2)(B) requires, at a minimum, whatever opportunity is mandated by the Constitution; therefore, an opportunity that is "generous" or "more than adequate" may, in some circumstances, require more access than what would be mandated by the Constitution alone. If the statutorily required ample opportunity to access his hard drive has not been provided, the Court may order production of the hard drive without deciding whether the Constitution would also compel its production.

"[W]hether there is ample opportunity for inspection, viewing, and examination is a factual issue that must be resolved on the record in each case." Id. at 10.

Here, the government cannot assure Mr. Saleem that all the tools necessary for his computer forensics experts evaluation will be provided in the prosecutor's office conference room. In essence, the government is offering a room to use and nothing more.

Respectfully submitted,

/s/Dean Boland

| | |
|---|---|
| Thomas R. Cox, III<br>PO Box 192198<br>Dallas, TX 75219<br>214-526-5600 phone<br>214-742-3881 fax<br>coxlegal@yahoo.com | Dean Boland<br>1475 Warren Road<br>Unit 770724<br>Lakewood, Ohio 44107<br>216-236-8080 phone<br>866-455-1267 fax<br>dean@bolandlegal.com |

## CERTIFICATE OF SERVICE

A copy of the foregoing shall be served on June 19, 2012 on all parties by operation of the court's electronic case filing system.


/s/ Dean Boland
Dean Boland